Raymond Haberer, Appellee, v. Moorman Manufacturing Company and Launer Hoffman, Appellants.

Term No. 50M2.

Heard in this court at the May term, 1950. Opinion filed October 2, 1950. Released for publication November 2, 1950.

SCHMIEDESKAMP & NEU, of Quincy, GLEN B. WILSON, of Greenville, and KRAMER, CAMPBELL, COSTELLO & WIECHERT, of East St. Louis, for appellants.

MEYER & MEYER, of Greenville, for appellee.

MR. JUSTICE CULBERTSON delivered the opinion of the court.

This is an appeal from a judgment of the county court of Bond county in the sum of $1,500 in favor of appellee, Raymond Haberer (hereinafter called plaintiff), as against appellants, Moorman Manufacturing Company, a corporation, and Launer Hoffman (hereinafter called defendants). The cause was tried by a jury and the judgment was based on the verdict of the jury in the sum of $1,500.

The complaint and evidence in the case show that defendant, Moorman Manufacturing Company, through its agent, Launer Hoffman, offered to sell a certain product known as "Stomach Worm Sweep for Stomach Worms in Sheep and Goats" to plaintiff and to administer such product to the sheep for a consideration of $5.25. The defendant, Launer Hoffman, worked for the Moorman Manufacturing Company as a representative in Bond county. The advertising instructions on the Moorman Company product stated that "Moorman's sheep dosing syringe with flexible metal shaft should be used."

The sheep acquired by plaintiff had originally been received by certain individuals in January of 1948, and in February about 10 per cent of the sheep had shipping fever. The sheep were given a serum for immunity. There was evidence that in the latter part of March the flock of sheep were healthy, even though a few had had shipping fever. In May plaintiff purchased a flock of sheep and after the plaintiff had purchased such sheep defendant Hoffman called upon plaintiff and advised him he was a representative of the Moorman Manufacturing Company and requested that they be permitted to worm plaintiff's sheep. Defendant Hoffman advised the plaintiff that "we find that all sheep have worms and we have a medicine and if you buy this medicine from me and let me administer it to the sheep they will do much better than they are doing now." The order for the medicine was taken and paid for and was received in due course but was not opened by plaintiff. Defendant Hoffman took the medicine, broke the seal, and brought a syringe with him which he inserted into the sheep's mouth. The insertion of the medicine into the sheep was completed on two different occasions. Prior to the giving of the medicine to the sheep there was evidence that they were in good health. Two days after the old sheep had received the medicine on July 17, they all became sick and continued in such condition until some died and others were sold. On July 26, 1948, the worm medicine was administered by defendant Hoffman to 105 lambs. The lambs became ill very quickly and were in a toxic condition within a couple of hours after the medicine had been administered. The district manager of the Moorman Company then went out to see the lambs and advised that the lambs be kept on feed, contrary to the advice of a veterinarian that the lambs be taken off feed. There was some evidence that an examination on one or more of the dead lambs had indicated that

a chronic condition was progressing for several weeks or months and that at the time the sheep were given the worm medicine they were sick. There was also evidence to the effect that the worm medicine at least aggravated the condition of the sheep and should not have been given to them. There was evidence that the medicine might get into the lungs of the sheep if the method of injection was not properly controlled.

On the trial of the cause in ruling on an objection which was made to an answer given by a witness on the ground that it stated a conclusion and further that "there isn't any showing as to what caused this condition, when it occurred, or anything else," the trial court stated, "I think the cause of it, or what he thought was the cause of it, has been fixed. The last part should be stricken." When this comment was made by the court in the course of the trial a motion was made to withdraw a juror and continue the case because it seemed to be a prejudicial remark made by the court in the presence of the jury, and the statement of the court is assigned as a basis for reversal upon appeal in this cause.

The amended complaint charged the defendant Moorman Manufacturing Company with having violated a warranty in that it warranted its "Worm Sweep" and its administration of it to plaintiff's sheep would not harm plaintiff's sheep, which warranty plaintiff relied upon in purchasing the medicine and in contracting for defendant's administration thereof. It is the contention of plaintiff that defendants are bound by their implied warranty that the worm medicine was merchantable and proper for the general use for which it was sold and recommended by them. It was also the contention of plaintiff in this cause that defendants had entered into a specific binding contract wherein defendants agreed to furnish and administer their worm medicine to plaintiff's sheep without harmful effects on the sheep and that defendants were guilty

of negligent breaches of duty, as alleged in the amended complaint.

■ Without passing upon the question of warranties involved, implied, or otherwise, there was evidence to the effect that for a valuable consideration defendants had agreed to furnish and administer with their special equipment the worm medicine sold by the Moorman Company, through Hoffman as an agent. The sheep to which Hoffman administered the medicine became sick and many of them died. Plaintiff relied on Hoffman and the Moorman Company completely under the circumstances. The plaintiff would not be bound by any private or secret arrangement between the Moorman Company and their agent, Hoffman. There was evidence in the court below which justified the conclusion that the defendant Moorman Company was bound by the acts of its agent Hoffman, acting within the apparent scope of his authority (*Nash v. Classen,* 163 Ill. 409; *Lindroth v. Walgreen Co.,* 329 Ill. App. 105, 116–120).

■ There was also evidence that the sheep were in good health prior to administering the worm medicine, and evidence of the death or the illness of the sheep thereafter was competent to establish that such death or impairment of health resulted from the administration of the medicine (*Weil-Kalter Mfg. Co. v. Industrial Commission,* 376 Ill. 48, 55). The administration of the medicine at least aggravated a pre-existing condition of the sheep, even on defendants' theory, and that in itself would be sufficient to support a verdict (*Olin Industries, Inc. v. Industrial Commission,* 394 Ill. 593).

■ It is not necessary that a causal connection be shown by medical testimony between the occurrence complained of and the injury or illness where it is clearly apparent from the illness itself and the circumstances attending it (*Patargias v. Coca Cola Bottling Co. of Chicago, Inc.,* 332 Ill. App. 117; *Duval v.*

*Coca Cola Bottling Co. of Chicago,* 329 Ill. App. 290, 295). The evidence disclosed that the group of sheep, which included 400 in all, were divided purely by chance and not by any specific selection and simply by walking through the flock; and that the sheep which were taken by the plaintiff became ill after they were treated with the product of defendant company and those which were taken by the other buyer, George Ethridge, did not become ill. This circumstance could well have been considered by the jury in arriving at their verdict.

 The determination of the credibility of witnesses and the weight of the evidence where there is some evidence on essential points is primarily for the jury, and the verdict of the jury should not be set aside simply because the court on appeal if sitting personally as triers of facts would have decided differently (*Tennant v. Peoria & P. U. R. Co.,* 321 U. S. 29; *Read v. Friel,* 327 Ill. App. 532). While there is a dispute as to the evidence there is sufficient evidence in the record to support the verdict of the jury and this court cannot on appeal, in view of the evidence in the record, state that such verdict was contrary to the manifest weight of the evidence.

 As to the comment of the court below in ruling on the particular objection, we do not believe that there is anything intrinsically misleading or prejudicial in the comment of the court which indicates that it was simply what the witness thought. This is particularly true in view of the fact that the jury was clearly instructed as to the necessity for establishing by evidence the right of the plaintiff in the cause to recover. We do not believe that the failure of the court below to declare a mistrial and continue the cause was error.

On a review of the entire record we find no reversible error. The judgment of the county court of Bond county will, therefore, be affirmed.

*Affirmed.*

SCHEINEMAN, P. J., and BARDENS, J., concur.